**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES KEITH IVEY,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-03234-CV-S-GAF** |
| | ) | **Case No. 12-03017-CR-S-GAF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

Presently before the Court is *pro se* Movant James Keith Ivey ("Movant") Motion to Vacate, Correct, or Set Aside a Sentence pursuant to 28 U.S.C. § 2255. (Doc. # 1). Respondent United States of America (the "Government") opposes. (Doc. # 9). For the reasons set forth below, Movant's Motion is DENIED.

**DISCUSSION**

**I. FACTS**

The underlying criminal case involved criminal charges alleging that Movant and others inflated invoices submitted by Movant's trucking company, J&M Trucking, Inc. ("J&M"), to Tracker Marine, LLC ("Tracker Marine"). (*See generally* Case No. 12-03017-CR-S-GAF, Doc. # 1). At trial, a former Tracker Marine employee, Paul Hunting, testified that his involvement in this scheme started when he authorized additional payments to J&M to compensate it for flat tires; in exchange, Movant would give Mr. Hunting cash to show his gratitude. (Trial Transcript ("T. Tr.") 63:1-14). Thereafter, Mr. Hunting started to inflate the number of miles recorded for certain trips J&M made; in exchange, Movant would meet Mr. Hunting in a parking lot and give him cash in an envelope. (*Id.* at 64:1-65:17). Eventually, Mr. Hunting and Movant agreed that

an additional 158 miles should be added to each invoice. (*Id.* at 67:17-68:2). This resulted in J&M being reimbursed an additional $300 per trip, which was split one-third to Mr. Hunting, one-third to Movant, and one-third to Movant's wife. (*Id.* at 68:4-18).

Mr. Hunting testified that J&M issued Mr. Hunting 1099s for the cash he received because Movant "didn't want to pay the taxes on the full amount, that [Mr. Hunting] had to incur some of the cost of the taxes." (*Id.* at 82:14-22). To conceal this income, Mr. Hunting reported it as income from his and his wife's catering business. (*Id.* at 84:6-85:19).

One of Movant's trial attorneys, Mr. Applequist, provided a Declaration Under Oath in which he recounts that in 2009 he and Movant undertook "several months of voluntary information-sharing and negotiations with the federal criminal case agents and responsible Assistant United States Attorney (AUSA) with a strategy of persuading the government to decline criminal prosecution." (Declaration Under Oath of John F. Appelquist ("Appelquist Decl.") ¶ 4; *see also* Affidavit of Gary L. Smith ("Smith Aff.") ¶ 5(A)). As part of this process, one of Movant's attorneys suggested they obtain "an independent accounting review of [Movant's] financial records, in hopes that it would corroborate Movant's explanation for payments which the government contended were 'kickbacks' to [Mr. Hunting]." (Appelquist Decl. ¶ 6; Smith Aff. ¶ 5(A) ("There was a strategy discussed in 2009 of trying to persuade the Government not to file criminal charges. Included as part of that was the retention by the defense of an accounting firm to review the records. This was discussed with [Movant and his wife] and they agreed to it."). To accomplish this, Mr. Appelquist contacted Kirkpatrick, Phillips & Miller ("KPM"), an accounting firm, in order to prepare a financial report to be used by investigators in this case. (T. Tr. 238:15-20). The accountants at KPM testified that under the agreement they were free to discuss the matters calculated and how they arrived at the

calculations with law enforcement. (*Id.* at 238:21-239:2). Movant and his wife met with the accountants and told them J&M leased some vehicles from Mr. Hunting and that they were paying him the net profits on those vehicles. (*Id.* at 235:20-236:9; 240:4-17). Movant also met with a Federal Bureau of Investigation agent and provided this same explanation. (*Id.* at 288:8-24).

Subsequently, a federal grand jury returned a twenty-four count Indictment charging Movant, his wife, and Mr. Hunting with conspiracy, wire fraud, conspiracy to launder money, false statements, and willful failure to file an income tax return. (Case No. 12-03017-CR-S-GAF, Doc. # 1). Mr. Hunting pled guilty to the crimes for which he was indicted. (*Id.*, Doc. # 13).

At trial, one of the accountants testified that the profits on the trucks allegedly owned by Mr. Hunting did not match the amounts reported on the 1099 Forms J&M provided to Mr. Hunting. (T. Tr. 244:5-19). During trial, an employee of Tracker Marine's parent company testified that in some point in August or September of 2008 Tracker Marine stopped paying J&M on their invoices and that there was about $200,000 worth of open invoices. (*Id.* at 46:16-47:1). Movant also testified that there was a little over $200,000 in open, unpaid invoices, but that he hadn't seen the invoices. (*Id.* at 434:4-11). Following the bench trial, Movant and his wife were found guilty of all crimes they were charged with. (Doc. # 63).

Mr. Thomas Carver, Movant's sentencing counsel, objected to the loss figures on the ground that Tracker Marine had withheld approximately $200,000 in open invoices owed to J&M. (Case No. 12-03017-CR-S-GAF, Doc. # 90, p. 38). He argued that "whatever the established loss figure is, it should be reduced by the total of open invoices." (*Id.* at 39). At sentencing, this Court found the loss calculation for purposes of sentencing was $797,325 and

that Movant was not entitled to any setoff for the open invoices. (Sentencing Transcript ("Sent. Tr.") 31:25-32:11). This Court ultimately sentenced Movant to a total of seventy months' imprisonment, three-years of supervised release, and ordered restitution in the amount of $797,325. (*Id.* at 40:16-41:11). Movant did not file a direct appeal from the Court's conviction or sentence.

**II. LEGAL STANDARD**

Under 28 U.S.C. § 2255, a movant may collaterally attack his sentence on four (4) grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-427 (1962) (quoting 28 U.S.C. § 2255).

**III. ANALYSIS**

Movant argues habeas relief is appropriate for three reasons. (*See generally* Doc. # 1). All three of Movant's grounds argue that he received ineffective assistance of counsel from either his trial counsel or his sentencing counsel. (*Id.*). First, Movant alleges his trial counsel was ineffective for hiring KPM under an open agreement. (*Id.* at 8-10). Second, Movant argues his trial counsel was ineffective for failing to have the amount of loss reduced to reflect the open invoices owed by Tracker Marine to J&M. (*Id.* at 13-15). Lastly, Movant argues his sentencing counsel was ineffective for advising Movant not to appeal. (*Id.* at 18-19).

Movant's claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A movant carries a heavy burden to establish ineffective assistance of counsel pursuant to § 2255. *United States v. Apfel*, 97 F.3d

1074, 1076 (8th Cir. 1996). To prevail on an ineffective assistance of counsel claim, a movant must meet a two-prong test: a movant must demonstrate (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a movant must show his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. However, there is a strong presumption that counsel's challenged actions or omissions were sound strategy under the circumstances. *Id*. at 689. Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. Under the second prong of the *Strickland* test, to demonstrate prejudice, a movant must prove there is a reasonable probability that the result of the proceedings would have been different if counsel had performed competently. *Id*. at 694. Failure to satisfy both is fatal to the claim. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (explaining there is no need to reach the performance prong if the court determines the defendant suffered no prejudice from the alleged ineffectiveness).

First, Movant argues his trial counsel was ineffective for hiring KPM under an open arrangement that gave the accountants permission to disclose their conclusions and report to the Government, which thereby resulted in the disclosure of confidential attorney-client information and work product. (Doc. # 1, pp. 8-10). Movant claims he had no knowledge of the open arrangement, was never shown the prepared report prior to trial, and would never have consented to the arrangement. (*Id.* at 8).

In this case, the Record reveals that Movant's trial counsel was not deficient under the circumstances. Prior to indictment, Movant and his counsel agreed on a strategy that attempted to persuade the Government against filing criminal charges. (Appelquist Decl. ¶ 6; Smith Aff. ¶

5(A)). This strategy entailed several months of Movant and his wife voluntarily sharing information with the Government. (Appelquist Decl. ¶ 4; Smith Aff. ¶ 5(A)). As part of this information sharing process, Movant's trial attorney allowed KPM to review J&M's records, in hopes that this review would corroborate Movant's account of the payments to Mr. Hunting. (Appelquist Decl. ¶ 6; Smith Aff. ¶ 5(A)). To aid in preparing a report, Movant and his wife met with the accountants. (T. Tr. 235:20-236:9; 240:4-17). However, this strategy ultimately failed and the Government chose to indict Movant and his wife. Thereafter, at trial, the accountants testified that Movant's explanation that the payments to Mr. Hunting were to cover the profits on trucks Mr. Hunting leased J&M did match the records they were provided, and Movant was ultimately found guilty. (*Id.* at 244:5-19).

Accordingly, with the benefit of hindsight wisdom, Movant's trial counsel's decision to hire KPM under an open agreement did not ultimately benefit Movant. However, the Supreme Court has noted that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 486 U.S. at 689. At the time Movant's counsel decided to employ KPM, the strategy was to attempt to persuade the Government not to indict Movant. Movant agreed to this strategy, agreed to employ the accountants, and met with the accountants and the Government to provide his explanation of the payments to Mr. Hunting. Therefore, Movant's counsel's decision to employ the accounting firm constituted "sound strategy under the circumstances." *Id.* Accordingly, Movant's claim that his counsel was ineffective for employing KPM in an open engagement is meritless.

Second, Movant argues his trial counsel was ineffective for failing to challenge and mitigate the amount of loss. (Doc. # 1, pp. 13-15). Movant claims he had documentation

available in the courtroom that showed legitimate expenses as offsets and credit against the loss, but that his counsel refused to use it. (*Id.* at 13).

However, Movant's argument that his counsel did not attempt to mitigate the loss amount is belied by the Record. During trial, both an employee of Tracker Marine's parent company and Movant testified that testified that Tracker Marine owed J&M over $200,000 due to open, unpaid invoices. (T. Tr. 46:16-47:1; 434:4-11). Further, during sentencing, Movant's sentencing counsel argued that the established loss figure should be reduced to reflect these open invoices. (Case No. 12-03017-CR-S-GAF, Doc. # 90, pp. 38-39). However, this Court ruled that Movant was not entitled to a set-off for the open invoices. (Sent. Tr. 31:25-32:11). Therefore, Movant's argument that his counsel was inadequate for failing to challenge and mitigate the loss amount is contradicted by the Record. Moreover, even if Movant's loss figure were to be credited with the $200,000 due to these open invoices, this would not have changed the results of the proceedings. This Court found that the loss figure was $797,325; thus, the amount with the $200,000 credit would be $597,325. (*Id.*). Under the Sentencing Guidelines both $797,325 and $597,325 are more than $400,000 and less than $1,000,000 and therefore, under either calculation, Movant's offense level would be increased by fourteen. *See* U.S.S.G. § 2B1.1(b)(1)(H)-(I). Accordingly, Movant's second argument that his counsel was ineffective is also meritless.

Lastly, Movant argues his sentencing counsel was ineffective for failing to advise Movant to file a direct appeal. (Doc. # 1, pp. 18-19). Movant claims he "requested an appeal, and was advised against it." (*Id*. at 18). As the Eighth Circuit held, "[i]f an attorney does not carry out his client's express instructions to appeal or fails to see that his client is informed of his right to appeal, the client is denied the effective assistance of counsel." *United States v. Neff*, 525 F.2d 361, 363 (8th Cir. 1975). However, the decision whether to appeal is ultimately up to

the defendant and "ineffective assistance of counsel cannot be presumed from the failure to advise that an appeal be taken on [an] issue." *Id.* at 364. Rather, in deciding whether counsel was ineffective for advising against appealing, the court will consider both whether the issues "are cognizable and valid in a habeas corpus proceeding" and also whether "they might have succeeded on direct appeal." *Id.* at 363.

Movant's sentencing counsel stated that he advised Movant of his right to appeal his conviction and sentence. (Declaration of Thomas D. Carver ¶ 3). However, he also advised Movant that he did not think he would be successful in his appeal because the issues largely involved factual findings and that an appeal would involve substantial expense. (*Id.* ¶¶ 4-5). Thus, because Movant was advised of his right to appeal, to prevail on an ineffective assistance claim, Movant must establish that his points might have succeeded on direct appeal. *Neff*, 525 F.2d at 363. However, as discussed more fully above, the issues Movant would presumably have appealed are all meritless. Accordingly, Movant's sentencing counsel was not ineffective for advising Movant against appealing.

## IV. EVIDENTIARY HEARING AND CERTIFICATE OF APPEALABILITY

Movant is not entitled to an evidentiary hearing on his § 2255 Motion if the Motion, the files, and Record of the case conclusively show he is entitled to no relief. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008). No hearing is required "'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). It is clear, from the above discussion, an evidentiary hearing is unnecessary to resolve Movant's claims, since Movant's claims are inadequate on their face to justify relief in light of the applicable law. Movant can appeal this decision to the Eighth Circuit only if this Court issues a certificate of

appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability should be issued only if Movant can make a substantial showing of a denial of a constitutional right. *See id.* § 2253(c)(2). To meet this standard, Movant must show that reasonable jurists could debate whether the issues should have been resolved in a different manner or that the issues deserve further proceedings. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed above, Movant's arguments fail as a matter of law. Moreover, the merits of his claims are not debatable among jurists or deserving of further proceedings.

## CONCLUSION

Movant claims he is entitled to habeas relief under § 2255 for three reasons. All three of Movant's arguments allege that his trial or sentencing counsel provided ineffective assistance of counsel. However, the Record reveals that Movant's counsels' decisions all constituted sound strategies under the circumstances. Thus, Movant fails to demonstrate a basis under § 2255 to set aside, vacate, or correct his sentence. Further, there is no need for an evidentiary hearing, and no certificate of appealability shall be issued. For these reasons and the reasons set forth above, Movant's Motion is DENIED, no evidentiary hearing is necessary, and no certificate of appealability shall be issued.

**IT IS SO ORDERED.**

Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: October 24, 2014.